SAM HIRSCH
Acting Assistant Attorney General
U.S. Dept. of Justice/Envt. and Nat. Resources Div.
MARK A. NITCZYNSKI
U.S. Dept. of Justice/ENRD
Environmental Defense Section
999 18th Street; South Terrace; Suite 370
Denver, CO 80202
(303) 844-1498
ELIZABETH B. DAWSON
Environmental Defense Section
P.O. Box 7611
Washington, D.C.  20004-7611
(202) 514-8293

MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
PAMELA DeRUSHA
Chief, Civil Division
Assistant United States Attorney
920 W. Riverside Ave., Suite 340
P.O. Box 1494
Spokane, WA  99212-1494

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COLUMBIA RIVERKEEPER,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS, ET AL.,<br><br>    Defendants. | No. 2:13-md-2494-LRS<br><br>This document applies to:<br>2:13-cv-282-LRS; 2:13-cv-00418; 2:14-cv-00030-LRS<br><br>**ORDER OF DISMISSAL WITHOUT PREJUDICE PURSUANT TO FED. R. CIV. P. 41** |

Order of Dismissal Without Prejudice Pursuant to Fed. R. Civ. P. 41, Page 1

The Court, having considered the Joint Motion for Dismissal Without Prejudice ("Joint Motion"), and for good cause shown, hereby GRANTS the Joint Motion.

Accordingly, IT IS HEREBY ORDERED that:

(1) Subject to and in accordance with the terms and conditions of the Settlement Agreement attached hereto, these centralized cases (Nos. 2:13-md-02494-LRS, 2:13-cv-00282-LRS, 2:13-cv-00418-LRS and 2:13-cv-00030-LRS) are dismissed without prejudice; and

(2) Subject to and in accordance with paragraph 8.B of the above-referenced Settlement Agreement, this Court shall retain jurisdiction over these centralized cases for the purpose of resolving those disputes for which Plaintiff or Defendants may petition the Court.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

Dated this 14th day of August, 2014.

                                        *s/Lonny R. Suko*
                                  _____
                                  LONNY R. SUKO
                        Senior United States District Judge

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made by and between Columbia Riverkeeper (hereafter, "Plaintiff") and the U.S. Army Corps of Engineers and Lieutenant General Thomas P. Bostick, in his official capacity as the U.S. Army Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers (hereafter, collectively, "Corps" or "Defendants"). In this Agreement, Plaintiff and Defendants may collectively be referred to as "Parties" and may be referred to individually as a "Party."

WHEREAS, on July 31, 2013, Plaintiff filed in separate federal district courts three related Complaints, one each in the District of Oregon (No. 3:13-cv-01310-ST), the Western District of Washington (No. 3:13-cv-05640-RBL) and the Eastern District of Washington (No. 2:13-cv-282-LRS);

WHEREAS, the Complaints assert that the Corps discharges pollutants from eight (8) dams (collectively, "Dams") that the Corps owns and operates in Washington and Oregon, allegedly in violation of section 301(a) of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a)[1];

---

[1] In this Agreement, a single one of the Dams may be referred to individually as "Dam."

WHEREAS, the Complaint filed in the District of Oregon addressed alleged discharges of pollutants from the portions of the Bonneville, John Day and McNary dams located in the State of Oregon;

WHEREAS, the Complaint filed in the Western District of Washington addressed alleged discharges of pollutants from the portion of the Bonneville Dam located in the State of Washington;

WHEREAS, the Complaint filed in the Eastern District of Washington addressed alleged discharges of pollutants from The Dalles, Ice Harbor, Lower Monumental, Little Goose and Lower Granite dams, and also addressed alleged discharges of pollutants from the portions of the John Day and McNary dams located in the State of Washington;

WHEREAS, the Complaints seek similar relief regarding the Dams, including various injunctive relief and an award of Plaintiff's litigation costs as authorized by section 505(d) of the CWA, 33 U.S.C. § 1365(d);

WHEREAS, on September 12, 2013, Plaintiff filed its Motion to Transfer and Consolidate under 28 U.S.C. § 1407 ("Motion to Transfer") before the Judicial Panel on Multidistrict Litigation ("Panel");

WHEREAS, on December 13, 2013, the Panel issued a Transfer Order that centralized the three cases in the United States District Court for the Eastern District of Washington;

WHEREAS, the Eastern District of Washington has assigned one case number for the three centralized cases (No. 2:13-md-02494-LRS) and also has assigned separate case numbers for each of the three individual cases (Nos. 2:13-cv-00282-LRS, 2:13-cv-00418-LRS and 2:13-cv-00030-LRS);

WHEREAS, this Agreement resolves all of the related cases, collectively and individually, centralized in the Eastern District of Washington (Nos. 2:13-md-02494-LRS, 2:13-cv-00282-LRS, 2:13-cv-00418-LRS and 2:13-cv-00030-LRS);

WHEREAS, Defendants have in place Spill Prevention Control and Countermeasure ("SPCC") plans at each of the Dams, which plans address oil spill prevention, preparedness, and response in order to prevent or minimize oil discharges to navigable waters and adjoining shorelines due to accidental oil spills, and Defendants conduct annual drills with other agencies to ensure that they have appropriate capability to respond to such spills;

WHEREAS, Defendants currently use Environmentally Acceptable Lubricants on portions of The Dalles and John Day dams;

WHEREAS, Defendants received a National Pollutant Discharge Elimination System ("NPDES") permit, Number 102768, from the Oregon Department of Environmental Quality ("Oregon DEQ") for discharges from the oil-water separator at Bonneville Dam, Powerhouse 1, which discharges are not at issue in any of the Complaints;

WHEREAS, Defendants have sought renewal of NPDES permit Number 102768 and the Corps continues to operate under the terms of that permit;

WHEREAS, the Corps submitted to the United States Environmental Protection Agency ("EPA") in 2008 an application for an NPDES permit for discharges from The Dalles Dam, which application remains pending;

WHEREAS, Plaintiff and Defendants have agreed to this Agreement without any admission of fact or law;

WHEREAS, Plaintiff and Defendants consider this Agreement to be a fair, adequate and reasonable resolution of the claims that were or potentially could have been raised in any of the centralized cases regarding alleged discharges of pollutants from the Dams; and

WHEREAS, Plaintiff and Defendants believe that it is in the interest of the public, the Parties and judicial economy to enter into this Agreement rather than engage in protracted litigation;

NOW THEREFORE, the Parties, by and through their undersigned counsel, hereby agree upon the following settlement terms and conditions:

I.  Parties Bound.

   1.  This Agreement applies to, is binding upon and inures to the benefit of the Parties and their successors, assigns and designees.

II.  The Corps' Obligations.

2.  Within one (1) year of the Effective Date of this Agreement, the Corps shall apply for NPDES permits to address alleged discharges of pollutants, including, at a minimum, alleged discharges from powerhouse drainage sumps, un-watering sumps, spillway sumps, navigation lock sumps, wicket gate bearings, turbine blade packing/seals, and discharges of cooling water systems, at each of the Dams, unless an NPDES permit already addresses such discharges.[2]  The Corps agrees to address these alleged discharges in the NPDES permit applications, but addressing such alleged discharges in the applications shall not constitute an admission by Defendants that such alleged discharges constitute the discharge of a pollutant(s) under the CWA.  The Corps shall thereafter diligently respond to any requests from EPA and/or Oregon DEQ related to the permit applications. Following submission of the permit applications, the Corps shall submit written requests to EPA and/or Oregon DEQ every twelve (12) months, with copies provided to Plaintiff at the same time, requesting an update on the status of each

---

[2] This Agreement does not contain any requirement to apply for permits to address mere river flow through or over any of the Dams, or to address discharges from the oil-water separator at Bonneville Dam, Powerhouse 1.  Furthermore, the "application" to be submitted for The Dalles Dam shall consist of amendments to the currently pending permit application to make it consistent with the requirements of this paragraph.

permit application that remains pending; the Corps' obligations to submit such requests shall terminate for each Dam or portion thereof when the Corps obtains NPDES permit coverage that addresses discharges of pollutants associated with operations at that Dam or portion thereof.

    3.    The Corps shall notify Plaintiff of those events that the Corps reports to the National Response Center pursuant to the Corps' Spill Prevention, Control and Countermeasure plan for each of the Dams; provided, however, that the Corps' obligations to provide such notification shall terminate for each Dam or portion thereof when the Corps obtains NPDES permit coverage that addresses discharges of pollutants associated with operations at that Dam or portion thereof. The Corps' notification to Plaintiff shall not constitute an admission by the Corps of a discharge of any pollutant in violation of the CWA.

    4.    The Corps shall take the actions set forth below to reduce potential pollution from the Dams:

    (a)    Environmentally Acceptable Lubricants ("EALs"). Recognizing that the Corps already uses EALs on certain "in-water" equipment at the The Dalles and John Day dams, within twelve (12) months of the Effective Date of this Agreement, the Corps shall complete an assessment of whether it is technically feasible to switch from using grease as a lubricant on certain "in-water" equipment, including wicket gates for the hydropower turbines, navigation locks

and certain fishway equipment, to using one or more EALs as a lubricant on such equipment at the Dams. The Corps' evaluation of technical feasibility will be confined to the question of whether one or more EALs can be used without risk of potential damage to the equipment. Within eighteen (18) months of the Effective Date of this Agreement, the Corps shall switch to using one or more EALs as a lubricant on the in-water equipment where the Corps has determined that doing so is technically feasible, and shall provide to Plaintiff at that time the Corps': (i) assessment of whether it is technically feasible to switch from using grease as a lubricant on certain "in-water" equipment; and (ii) decisions whether or not to switch to using EALs. As used in this paragraph, "Environmentally Acceptable Lubricants" (or "EALs") means those lubricants that have been demonstrated to meet standards for biodegradability, toxicity and bioaccumulation potential that minimize their likely adverse consequences in the aquatic environment compared to conventional lubricants, as set forth in Section 4 of EPA 800-R-11-002, "Environmentally Acceptable Lubricants" (November 2011), and includes, but is not limited to, products labeled as such by one or more of the following labeling programs: Blue Angel; Swedish Standard(s); Nordic Swan; European Eco-label; and OSPAR (Convention for the Protection of the Marine Environment of the North-East Atlantic).

(b) Oil Accountability Plans. Within twelve (12) months of the Effective Date of this Agreement, the Corps shall: (i) prepare a final regional Oil Accountability Plan ("OAP") for the Corps' Northwestern Division; (ii) apply that OAP to each Dam (including, if necessary to be consistent with the regional OAP, by modifying the OAPs that currently exist at the Bonneville, John Day, The Dalles, and McNary dams); and (iii) provide to Plaintiff a copy of the final regional OAP and notice of how the regional OAP was applied to each Dam. The OAPs are intended to account for oils and greases used at the Dams, including the oils and greases used in the turbines, wicket gate bearings, navigation lock systems and fish way equipment. The OAPs shall be designed to: (i) track the addition of oils and greases; (ii) track the removal and/or recovery of oils and greases; and (iii) account for any differences between such addition and removal and/or recovery. The OAPs shall include, at a minimum, inspection, monitoring, assessment, testing and transfer procedures. The Corps shall develop, and make publically available on a Corps website six (6) months after completion of the OAPs and annually thereafter, reports that include a description of the results of the monitoring and any assessments that occurred during the preceding reporting period (six (6) or twelve months (12), whichever is applicable). Plaintiff recognizes and agrees that the reports are for informational purposes only. The Corps' obligations to provide such reports shall terminate for each Dam or portion thereof when the Corps

obtains NPDES permit coverage that addresses discharges of pollutants associated with operations at that Dam or portion thereof.

5. Without any admission of law or fact, within one hundred twenty (120) days after Defendants' receipt of correct payment and deposit information from Plaintiff or the Effective Date of this Agreement, whichever is later, Defendants shall pay to Plaintiff the amount of $ 143,500.00 by Electronic Funds Transfer ("EFT"). Plaintiff's counsel shall provide the following payment and deposit information to counsel for Defendants:

EFT Payable to
Bank name
Bank address
ABA number
Routing number
Account number
Name of Account
Taxpayer identification number

Plaintiff hereby releases any and all claims and/or potential claims under any statute or other authority, including but not limited to 33 U.S.C. § 1365(d), for costs of litigation, attorney fees, expert fees, court costs and other costs or fees accrued through the Effective Date of this Agreement in connection with the centralized cases.

III.    <u>Dismissal of Claims and Releases</u>.

      6.     The Parties agree that this Agreement represents a good faith compromise of all matters addressed in this Agreement. Upon execution of this Agreement, the Parties shall file an agreed-upon joint motion and proposed order providing that the centralized cases (Nos. 2:13-md-02494-LRS, 2:13-cv-00282-LRS, 2:13-cv-00418-LRS and 2:13-cv-00030-LRS) shall be dismissed without prejudice pursuant to Fed. R. Civ. P. 41, subject to the provisions of this Agreement. This Agreement shall be null and void if the Court does not dismiss the centralized cases in accordance with the terms set forth in the agreed-upon joint motion and proposed order.

      7.     Notwithstanding dismissal of these cases without prejudice, Plaintiff hereby releases, discharges and covenants not to assert (by way of commencement or refiling of any action, the joinder of any or all of the Defendants in an existing action, or in any other fashion) any and all claims, causes of action, suits or demands of any kind in law or in equity regarding alleged unpermitted discharges of pollutants from any of the Dams until either: (i) the Corps obtains NPDES permit coverage that addresses discharges of pollutants associated with operations at a particular Dam or portion thereof (at which time Plaintiff may assert a claim, cause of action, suit or demand regarding the Corps' compliance with the NPDES

permit coverage at that Dam or portion thereof); or (ii) seven (7) years after the Effective Date of this Agreement, whichever is earlier.

IV. <u>Dispute Resolution</u>.

8. The Parties agree that efforts shall be made to resolve any future dispute arising out of this Agreement (the "Dispute") in accordance with the procedures specified below.

(a) <u>Negotiation</u>. In the event of a disagreement between Plaintiff and Defendants concerning the interpretation or performance of any aspect of this Agreement, the dissatisfied party shall provide the other party with written notice of the Dispute and a request for informal negotiations. The parties shall meet and confer in a good faith effort to attempt to resolve the Dispute within thirty (30) days of receipt of the written notice or such time thereafter as is mutually agreed.

(b) <u>Petition for Judicial Resolution</u>. If the Parties are unable to resolve the Dispute informally within thirty (30) days of receipt of the written notice or such time thereafter as is mutually agreed, then either Plaintiff or Defendants may petition the Court to resolve the Dispute. The Court shall retain jurisdiction over this case for the sole purpose of resolving those disputes over which Plaintiff or Defendants may petition the Court. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). Notwithstanding any other provision of this Agreement, however, Plaintiff and Defendants expressly preserve, and do not

waive or limit, any and all defenses relating to such litigation. Contempt of court is not an available remedy under this Agreement.

    (c)    <u>Confidentiality of Negotiations and Mediation</u>.  All informal negotiations and related communications and proceedings conducted pursuant to paragraphs A and B of this Section IV are confidential and shall be treated as compromise and settlement negotiations for the purposes of applicable rules of evidence and any additional confidentiality protections provided by applicable law.

V.    <u>Force Majeure</u>.

    9.    The possibility exists that circumstances outside the reasonable control of the Corps could delay compliance with the timetables set forth in this Agreement. Such circumstances include, but are not limited to, sufficient funds not being appropriated as requested, the unavailability of appropriated funds for expenditure, government shutdown, and significant events that are outside of normal fluctuations in Dam operations and that require an immediate and/or time-consuming response by the Corps, including but not limited to significant events related to electrical power needs, navigation requirements, or actual or potential flooding. Should a delay occur due to such circumstances, then any resulting failure to meet the deadlines or other terms set forth in this Agreement shall not constitute a failure to comply with those deadlines or other terms, and any deadlines so affected shall be extended one day for each day of the delay. The

Corps will provide Plaintiff with reasonable notice in the event that the Corps invokes this term of this Agreement. Any dispute regarding invocation of this provision shall be resolved in accordance with the Dispute Resolution provisions of Section IV above.

VI. <u>Miscellaneous Provisions</u>.

    10. Any notice required or made with respect to this Agreement shall be in writing and shall be effective upon receipt. Any notice or other documents required pursuant to this Agreement shall be sent to the following contact persons:

For Plaintiff:

Lauren Goldberg
Columbia Riverkeeper
111 Third Street
Hood River, OR 97031
Phone: (541) 965-0985
email: lauren@columbiariverkeeper.org

Brian Alan Knutsen
Smith & Lowney PLLC
2317 E John Street
Seattle, WA 98112
Office Phone: (206) 860-2883
Direct Phone: (971) 373-8692
Fax: 206-860-4187
email: briank@igc.org

For Defendants:

U.S. Army Corps of Engineers, Northwestern Division
Attn: Office of Counsel
1125 NW Couch St.

Portland, OR 97209
Phone: (503) 808-3826
Fax: (503) 808-4057

Chief, Environmental Defense Section
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044
Phone: (202) 514-2219
Fax: (202) 514-8865

Mark A. Nitczynski
U.S. Department of Justice
Environment & Natural Resources Division/EDS
999 18th Street
South Terrace, Suite 370
Denver, CO 80202
Phone: (303) 844-1498
Fax: (303) 844-1350
email: mark.nitczynski@usdoj.gov

Elizabeth B. Dawson
U.S. Department of Justice/ENRD
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004-7611
Phone: (202) 514-8293
Fax: (202) 514-8865
email: Elizabeth.Dawson@usdoj.gov

Upon written notice to the other parties, any party may designate a successor contact person for any matter relating to this Agreement.

11. Upon fulfillment of the Corps' obligations under this Agreement, the Corps' obligations under this Agreement shall terminate.

12. Except as expressly provided herein, nothing in this Agreement shall be construed to limit or modify the discretion accorded to the Corps by any laws, including but not limited to the CWA or any other environmental statutes, or any principles of administrative law.

13. Nothing in this Agreement shall constitute an admission or evidence of any fact, wrongdoing, misconduct, or liability on the part of the Defendants, their officers or any person affiliated with them. The provisions, terms and conditions of this Agreement shall not be admissible in any judicial or administrative proceeding except: (i) in Defendants' defense of a claim, cause of action, suit or demand asserted by Plaintiff pursuant to paragraph 7 above; or (ii) in support or defense of a petition to the Court submitted by either party pursuant to paragraph 8.B above.

14. Plaintiff recognizes that the Corps' performance under this Agreement is subject to fiscal and procurement laws and regulations of the United States which include, but are not limited to, the Anti-Deficiency Act, 31 U.S.C. § 1341, et seq., and nothing in this Agreement shall be interpreted as or constitute a commitment or requirement that the Defendants obligate or pay funds in contravention of the Anti-Deficiency Act. In addition, nothing in this Agreement shall be interpreted as or constitute a commitment or requirement that the Defendants take actions in contravention of the Administrative Procedure Act, 5

U.S.C. §§ 551-559, 701-706, the CWA, or any other substantive or procedural law or regulation.

15. If, subsequent to the Effective Date of this Agreement, any change in the law goes into effect that alters or relieves the Defendants' obligations concerning matters addressed in this Agreement, then the Agreement shall be amended to conform to such changes. Any dispute regarding invocation or the applicability of this provision shall be resolved in accordance with the Dispute Resolution provisions of Section IV above.

16. Except as set forth in this Agreement, the Parties reserve and do not waive any and all other legal rights and remedies.

17. This Agreement shall be governed and construed under the laws of the United States.

18. This Agreement constitutes the final, complete and exclusive agreement and understanding between Plaintiff and Defendants with respect to the matters addressed in this Agreement. There are no representations, agreements or understandings relating to this settlement other than those expressly contained in this Agreement.

19. The Effective Date of this Agreement shall be the date upon which the Court enters the order of dismissal proposed by the Parties.

20. The Parties may, in a written document signed by all of the Parties, modify this Agreement.

21. The Parties hereby agree that any and all rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Agreement.

22. Each undersigned representative of the Parties certifies that he or she is fully authorized by the Party to enter into this Agreement and to bind such Party to comply with the terms and conditions of this Agreement.

23. This Agreement may be executed in any number of counterparts, each of which shall be deemed to constitute an original, and such counterparts shall together constitute one and the same Agreement. The execution of one counterpart by any Party shall have the same force and effect as if that party had signed all other counterparts.

24. Nothing in this Agreement shall be construed to make any person or entity not executing this Agreement a third-party beneficiary to this Agreement.

WHEREFORE, after having reviewed the terms and conditions of this Agreement, Plaintiff and the United States on behalf of the Defendants hereby consent and agree to the terms and conditions of this Agreement.

DATE: 8·4·2014     [signature]

BRIAN A. KNUTSEN
Smith & Lowney, P.L.L.C.
2317 East John Street
Seattle, Washington 98112
(971) 373-8692

ATTORNEY FOR COLUMBIA RIVERKEEPER

SAM HIRSCH
Acting Assistant Attorney General
Environment and Natural Res. Division

DATE: 8/4/2014     [signature]

MARK A. NITCZYNSKI
United States Department of Justice/ENRD
Environmental Defense Section
999 18th Street
South Terrace; Suite 370
Denver, CO 80202
(303) 844-1498

ELIZABETH B. DAWSON
U.S. Department of Justice/ENRD
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20004-7611
(202) 514-8293